IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRANDON ROBERTS, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-13-3765 |
| NORTH BRANCH CORRECTIONAL INSTITUTION, et al., | * | |
| Defendants | * | |
| | *** | |

# MEMORANDUM

Brandon Roberts, who is self-represented, filed suit against defendants North Branch Correctional Institution ("NBCI"); former Warden Bobby P. Shearin; Major Mark Yacenech; and former Chief of Security Keith Arnold.[1]  ECF 1.  He subsequently filed an Amended Complaint.  ECF 14.  Roberts alleges, *inter alia*, violations of his rights under the First and Fourteenth Amendments to the Constitution, claiming defendants denied him the opportunity to purchase certain books. ECF 14 at 3-4.  He seeks declaratory relief, as well as compensatory and punitive damages. ECF 1 at 7; ECF 14 at 7.

Defendants have filed a renewed motion to dismiss or for summary judgment (the "Motion").  ECF 30.  No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.  For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

## I.  Procedural Background

Roberts is a Massachusetts prisoner incarcerated at NBCI in Cumberland, Maryland, pursuant to the Interstate Corrections Compact.

---

[1] The Clerk shall amend the docket to reflect the full and correct names of defendants.

On June 30, 2014, defendants filed a motion to dismiss, or, in the alternative, for summary judgment motion. ECF 16.  It was supported by a legal memorandum (ECF 16-1) and several exhibits.  Plaintiff sought two extensions in which to respond to the motion (ECF 18, ECF 21), both of which were granted. ECF 19, 22. In addition, on September 17, 2014, plaintiff filed a "Declaration of Brandon Roberts Pursuant to Federal R. Civ. P. 56 (D)," in which he sought to engage in discovery before responding to defendants' dispositive motion. ECF 20. I denied that request in an Order entered September 17, 2014. ECF 22. Thereafter, plaintiff noted an interlocutory appeal to the United States Court of Appeals for the Fourth Circuit. ECF 23.  As a result of the appeal, I denied the dispositive motion, without prejudice, and subject to the right of defendants to refile it following the disposition of plaintiff's interlocutory appeal.  ECF 27.  The Fourth Circuit dismissed the appeal on March 31, 2015 (ECF 28), and the Mandate issued on April 22, 2015.  ECF 29.

On October 29, 2015, defendants moved to renew their dispositive motion. ECF 30. They also incorporated their earlier memorandum of law (ECF 16-1) and exhibits appended to it. *See* ECF 30 ¶ 7.  Plaintiff was advised of the filing of the Motion and his opportunity to respond to it. ECF 31.  On December 31, 2015, plaintiff filed a motion for temporary stay of proceedings (ECF 32), indicating that he was scheduled to be hospitalized for approximately four days for treatment of a fractured wrist and was therefore unable to respond to the Motion in a timely manner.  I denied the request for a stay, but granted plaintiff an extension of time, to and including February 16, 2016, to respond to the merits of the dispositive motion.  ECF 33.  No response has been received.

## II. Factual Background

In his suit, Roberts states that he ordered literature from Afrikan World Books, including "The Biggest Secret" by David Icke. ECF 14 at 3. The materials were received and held by the NBCI administration, without notice to plaintiff. Subsequently, plaintiff received notice from the book vendor that the materials had been sent back to the vendor by the NBCI administration. *Id.*; *see* ECF 16-3 at 3, 4.

Plaintiff asserts that he filed an internal complaint and learned that Warden Shearin authorized the return of the materials. Shearin indicated that plaintiff did not forward the proper form or get the proper approval to order the materials. *Id*. at 4. Plaintiff states that he obtained memos issued by Yacenech and Arnold restricting the purchase of books and requiring plaintiff to comply with a procedure that they put in place for ordering books, which was approved by Shearin. *Id*.

According to plaintiff, defendants were advised by the Commissioner of Corrections, on at least two occasions, to stop the practice, but they failed to comply. *Id.* Plaintiff claims that the practice gives defendants unchecked authority to obstruct or delay the receipt of books by inmates and is an exaggerated response to security concerns, as the policy does not prevent contraband form entering the facility. *Id*.

Defendants indicate that on February 27, 2013, plaintiff ordered from vendor Afrikan World Books the book entitled "The Biggest Secret." ECF 16-3 (Vendor Correspondence) at 2; ECF 16-4 (Declaration of Richard Miller, NBI Assistant Warden), ¶ 4. The book was shipped to NBCI in March 2013, and on March 6, 2013, NBCI Property Room personnel returned the book to the vendor. ECF 16-4, ¶ 4. On March 29, 2013, the vendor wrote to plaintiff advising that the book had been returned by the institution. ECF 16-3 at 3. The vendor also notified plaintiff on

April 30, 2013, that his book order of February 27, 2013, was returned again on April 29, 2013. *Id.* at 4.  The correspondence also said: "4/30/13 I called NBCI property office.  Spoke with Sgt. Harris.  He said that all orders have to approved!!!" *Id.*

Notably, during the relevant time, plaintiff was assigned to disciplinary segregation.  In particular, he was on segregated status from August 28, 2012 to March 20, 2013,  and from April 28, 2013 to July 26, 2013.  ECF 16-4, ¶ 3.  Thus, when plaintiff ordered the book and when it was sent to him, he was on segregated status.

NBCI is a maximum security prison in Maryland housing approximately 1500 maximum security inmates, the majority of whom are serving life terms.  ECF 16-4, ¶ 5.   Assistant Warden Miller avers that NBCI's population tends to contain those inmates with longer sentences and a history of violence, gang affiliation, poor institutional adjustment, risk of escape, and/or assaultive behavior.  *Id*.  Moreover, inmates on disciplinary segregation are not permitted to receive any packages "while on that status." ECF 16-4, ¶ 3.

Miller explains that there have been "numerous" attempts "to smuggle contraband" into NBCI, including weapons, drugs, and on one occasion handcuff keys, concealed "in books sent by individuals posing as legitimate vendors." *Id*. ¶ 7. NBCI Institutional Directive 220.0007.1, effective January 2, 2013, was implemented to prevent the introduction of contraband into the institution, because the contraband "would adversely affect the security of the institution." *Id.* ¶ 7.  It sets forth the procedure for inmates to receive packages. *Id*. ¶ 6; ECF 16-5 at 8-16. Effective January 28, 2013, Change Notice 05-13 was issued for that directive, which provided:

> Inmates at NBCI may order books only from vendors approved by the appropriate Department Head, Unit Manager, Chief of Security and/or the Assistant Warden. The books must meet the criteria set forth in DCD.250.0001, DOC regulations, and NBCI. 250.0001.01.1 and may not exceed the 1.5 cubic feet allowed for storage space set forth in the "Allowable Inmate Property Matrix" for books/papers and  magazines/newspapers.

4

ECF 16-4, ¶ 6; ECF 16-5 at 4.

The Change Notice included a new order form for books as part of the directive. *Id*. The form for ordering books provides a space for the housing unit manager or designee to approve the request before forwarding the form to the property room manager. ECF 16-5 at 5.

All incoming books are processed through NBCI's Property Room, where they are x-rayed, scanned, and visually inspected for signs of tampering and for the presence of contraband. ECF 16-4, ¶ 9. Three officers assigned to the NBCI Property Room are responsible for receiving, examining, and distributing all inmate property arriving at the institution. *Id*. Warden Shearin did not personally review inmate requests for books. *Id*. ¶ 8.

Plaintiff filed a request for an administrative remedy ("ARP"), number NBCI-0908-13, complaining that he received notice from a vendor that a book delivered to NBCI was sent back to the vendor by the institution. ECF 16-4, ¶ 8; ECF 16-6 at 2-3. He claimed that he did not receive notice from the institution that the book was being returned and alleged that his First Amendment rights were violated. Additionally, he challenged the new book policy set forth in NBCI Institutional Directive 220-.0007.1. *Id*.

In rejecting his ARP, Warden Shearin stated:

Our review of your administrative remedy has been completed and your case has been dismissed in accordance with DCD 185-001. Specifically, your complaint is regarding the new book policy. An investigation revealed that the administration has developed a program for ordering books which is not in violation of your rights. All you have to do is submit a form to your Housing Unit manager for approval and then it is forwarded to an appropriate department head for final approval. It should be noted that if you do not have the appropriate approval, your book will be returned to the sender. On 3-06-13 a book was received from African World Books for you was returned to the sender on the same date because you did not have an approval form in your file. It is advised that you talk to your Housing Unit manager/Lieutenant about any additional questions regarding this matter. Your administrative remedy allegations are without merit.

ECF 16-4, ¶ 8; ECF 16-6 at 2.

Plaintiff appealed the denial of his ARP. ECF 16-4, ¶10; ECF 16-6 at 4-5. The appeal was dismissed based on a finding that the Warden had fully addressed the complaint. The dismissal also noted that "form Appendix 5 to NBCI-IC.220.0007.1 must be completed prior to receiving any type of packages, including books. No further action is warranted through the ARP process." ECF 16-4, ¶ 10; ECF 16-6 at 6.

Plaintiff next filed a grievance with the Inmate Grievance Office ("IGO") as an appeal of the disposition of ARP NBCI-0908-13. ECF 16-7, ¶ 3. In IGO No. 20131083, plaintiff reiterate his complaint that the book he ordered from the vendor was improperly returned by NBCI mailroom staff in March of 2013, without his being notified as required by DOC policy. *Id*.

Plaintiff's grievance was referred to the Maryland Office of Administrative Hearings. After a hearing before an Administrative Law Judge ("ALJ"), a decision and order was entered denying relief and dismissing the grievance as without merit. ECF 16-7 at 12. In making her determination, the ALJ noted that inmates are required to use the form Appendix 5 to ID 220.0007.1-Request to Order Education, Law, Religious and General books when ordering a book. *Id*. at 7, ¶ 12. Plaintiff failed to use the form in ordering his book and refused to fill out the form when he was advised that the form was a necessary part of the procedure. *Id*. ¶ 13.

Further, the ALJ found that plaintiff had not shown that the policy prohibiting disciplinary segregation inmates from receiving any packages did not apply to him. *Id*. at 10. As indicated, plaintiff was assigned to disciplinary segregation at all relevant times. ECF 16-8. The ALJ found the Property Room personnel acted appropriately in returning the book to the vendor solely on the basis that plaintiff was on disciplinary segregation and thus not entitled to receive packages pursuant to DOC policy. ECF 16-7 at 10.

The ALJ also found that plaintiff's claim regarding the violation of his First Amendment rights failed, stating, *id.* at 11:

> The provision requiring that NBCI inmates only order books from approved vendors serves a legitimate and neutral governmental interest, i.e., the prevention of contraband coming into the institution disguised as or hidden in a book. This provision, in combination with the Form, provides an alternative means for inmates to obtain books and publications, consistent with their First Amendment rights to access information. If there were no reasonable restrictions on inmates' ability to obtain books and publications, contraband could be sent by non-legitimate vendors, family members, or other persons, potentially resulting in threats to the security of the institution and the persons within it.

Additionally, it was noted that plaintiff was given the opportunity to order the book using the appropriate form but refused to do so. Instead, he insisted that the entire procedure violated his constitutional rights and he elected to pursue administrative remedies. *Id*. at 12.

### III. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 16; ECF 30. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U. S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movants expressly caption their motion "in the alternative," as one for summary judgment, and submit matters outside the pleadings for the court's consideration, the

parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[2]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435; 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration

---

[2] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

8

pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). And, "to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary"

and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

To be sure, plaintiff previously filed a Declaration under Rule 56(d), requesting discovery. ECF 20. And, I denied his request, because I found that it lacked specificity as to how the materials requested were essential to his opposition to the dispositive motion, and because there was no indication that any of the requested materials would give rise to a genuine issue of material fact. ECF 22. Plaintiff has done nothing to cure these deficiencies. Nor has he renewed his discovery request. Therefore, I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment, because it will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). However, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the

evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.  Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting

*Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III.  Discussion

A.  Sovereign Immunity

NBCI asserts that it is not subject to the instant suit, based on sovereign immunity.  I agree.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment did not *create* sovereign immunity; rather, it *preserved* the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011).

The preeminent purpose of state sovereign immunity is to accord states the dignity that is consistent with their status as sovereign entities. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).  Thus, states enjoy immunity from suits brought by their own citizens, even though the text of the Eleventh Amendment does not explicitly address such a scenario. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890).

Under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See generally Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011).  Sovereign immunity precludes a private individual not only from suing an unconsenting state in federal court, but also from suing an instrumentality of a state (also referred to as an "arm of the state"), absent waiver or a valid congressional

abrogation of sovereign immunity. *See Coleman v. Court of Appeals of Md.*, ___ U.S. ___, 132 S. Ct. 1327, 1333 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

As indicated, under the Eleventh Amendment, a state includes its agencies and departments. *See Penhurst*, 465 U.S. at 100 (stating that, in the absence of consent, the Eleventh Amendment bars suit against a State or one of its agencies or departments). Although the State of Maryland has waived its sovereign immunity for certain types of cases, it has not waived its immunity under the Eleventh Amendment to suit in federal court on the basis of the claims asserted here. NBCI is an arm of the State. As a result, suit against NBCI will be dismissed under Federal Rule of Civil Procedure 12(b)(1).

C.     First Amendment[3]

The material sought by plaintiff was to be obtained via the mail.  Prisoners have a limited First Amendment right to send and receive mail.  *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Johnson v. Goord,* 445 F.3d 532, 534 (2d Cir. 2006).   Regulations that affect the sending of mail to prisoners are centrally concerned with maintenance of prison order and security, and are measured under the reasonableness test of *Turner v. Safley*, 482 U.S. 78 (1987).

In upholding a prison regulation which permitted the ban of certain publications upon a determination by the warden of the prison that the publication is "detrimental to the security, good order, or discipline of the institution or ... might facilitate criminal activity," the Supreme Court has stated that security concerns must be balanced against the First Amendment interest involved in providing publications to inmates. *Thornburgh*, 490 U.S. at  417.  Such regulations are valid if reasonably related to legitimate penological interests, giving prison officials considerable deference in regulating the delicate balance between prison order and demands of "outsiders" who seek to enter the prison environment. *Id.*; *see also United States v. Stotts*, 925 F.2d 83, 87-88 (4th Cir. 1991) (regulations regarding legal mail reasonably related to penological interests); *Vester v. Rogers*, 795 F.2d 1179, 1183 (4th Cir. 1986) (upholding restrictions on prisoner's correspondence to other prisoners).

In examining the action of prison officials under the *Thornburgh* and *Safley* standards, this court must determine (1) whether the governmental objective underlying the regulations is

---

[3] Plaintiff indicates this court's jurisdiction is based upon the Religious Land Use and Institutionalized Persons' Act ("RLUIPA") 42 U.S.C. § 2000cc-1(a)(1)-(2), as well as 42 U.S.C. § 1983.  ECF 14 at 1.  Other than citing RLUIPA,  plaintiff has offered  no facts in support of a claim under RLUIPA.  He does not indicate whether the materials at issue were religious in nature. Nor does he indicate that his religious exercise has been burdened in any way. As such, I will not consider whether the institutional directive violates RLUIPA.

legitimate, neutral and rationally related to that objective; (2) whether there are other ways a prisoner may exercise his right to receive information; (3) what impact the accommodation of the asserted constitutional right will have on others in the prison; and (4) whether there exists an obvious, easy alternative to the regulation to ensure that the regulation is not an exaggerated response to prison concerns.[4] *See Thornburgh*, 490 U.S. at 417-418; *Turner*, 482 U.S. at 90.

As I see it, the Institutional Directive is reasonably related to a valid security concern designed to prevent contraband smuggling and protect others within the prison walls. As in *Thornburgh*, the Institutional Directive here was unrelated to the suppression of expression. Rather, it was enacted in order to further the important penological goal of institutional security by limiting the import of contraband into the facility.

Further, plaintiff has not established that he was harmed by the institutional directive as alternative means of expression are available to him. Plaintiff has access to books and legal materials, as well as the ability to write and receive correspondence. Additionally, there is no indication that plaintiff could not have received the desired books and literature if he had submitted the appropriate form.

No easy alternative to the regulation is readily apparent. Limiting receipt of books from vendors approved by the institution, in order to advance institutional security, is not an exaggerated response to prison security concerns. In short, plaintiff's First Amendment rights were not violated under the facts presented here.

---

[4] Earlier decisions issued in other cases in this District have upheld the constitutionality of the directive at issue here. *See Farewell v. Shearin*, PJM-13-1204 (D. Md.); *Williams v. Maynard, et al.*, ELH-13-2931 (D. Md.).

C.     Failure to follow directives

As noted above, the court finds that the Institutional Directive regarding receipt of publications from outside vendors does not violate plaintiff's First Amendment rights. To the extent that written directive or procedures were not followed to the letter in the adoption of the directive, the adoption of procedural guidelines does not give rise to a liberty interest. Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).

## IV. CONCLUSION

For the foregoing reasons defendants' Notion, construed as a motion for summary judgment, will be GRANTED, and judgment will be ENTERED in favor of defendants and against plaintiff.[5] A separate Order follows.

March 18, 2016                                            /s/
Date                                                           Ellen L. Hollander
                                                                  United States District Judge

---

[5] Because I find no constitutional injury, I need not address defendants' alternative arguments, based on qualified immunity and supervisory liability.